The Northern Trust Company, as Trustee Under the Will of Helen B. North, Plaintiff-Appellee, v. Esther L. North, et al., and Board of Regents of University and State Colleges of Arizona, Sonja Pinkham North, et al., and Unknown Owners, Defendants-Appellees, and The Valley National Bank of Arizona as Trustee Under the Will of David Brindley North Sued Herein as Valley National Bank, Trustee Under the Will of David Brindley North, Defendant-Appellant, and Richard W. Wolcott and The Northern Trust Company, Executors Under the Will of Robin Perle Dienst, The Northern Trust Company, Trustee Under Said Will, Henry E. Morris, et al., Defendants-Cross-Appellants.

Gen. No. 50,776.

First District, Fourth Division.

July 29, 1966.

Lord, Bissell & Brook, of Chicago (Theodore C. Diller, Graydon H. Ellis and Charles H. Weiland, of counsel), and Holesapple, Conner, Jones, McFall & Johnson, of Tucson, Arizona, for defendant-appellant.

Robert W. Qualey, of Geneva, for defendants-cross-appellants.

Spray, Price, Hough & Cushman, of Chicago (Winfield T. Durbin and Minard E. Hulse, Jr., of counsel), for defendants-appellees.

Morrill, Manning, Parker, North, Harkins & Manning for plaintiff-appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal and cross-appeal from a judgment construing that portion of a will relating to the disposition of the remainder interest in trust property upon termination of a life estate.

Plaintiff (The Northern Trust Company, as Trustee under the Will of Helen B. North) brought this action requesting the court to construe the will of Helen Brigham North and to instruct it as trustee thereunder as to the distribution of certain trust property. The will in question, executed on October 5, 1938, named as beneficiaries David Brindley North, her adopted son, Henry A. North, a brother, Dorothy North Haskins, a sister, and Robin Perle Dienst, a friend. The testatrix died in 1941; Henry A. North died in 1944; David Brindley North died in 1956 at the age of forty-one leaving a wife but no descendants; Robin Perle Dienst died on March 3, 1962; Dorothy North Haskins died on December 1, 1962, prior to the distribution to her of any share of the trust property. The Valley National Bank, trustee under the will of David Brindley North, is the appellant and the legal successors of Henry A. North and Dorothy North Haskins are the appellees. A cross-appeal is taken by the executors under the will of Robin Perle Dienst.

In Article III of her will the decedent established a trust, the property of which consisted of shares of stock,

471

and directed that the income and res thereof be distributed in relevant part as follows:

Section 1 contains bequests of specific sums of money to specified persons "who may be living at the time of my death" and orders the trustee to set aside and apply trust income for a period of three years to satisfy those bequests.

Section 2 provides that Robin Dienst (a friend of the decedent) shall have a life estate in the income of one-half of the trust property and also establishes an estate in the trust for David Brindley North, the legally adopted son of the decedent.

Section 4 states that David North shall have a remainder interest in the life estate of Robin Dienst.

Section 5 disposes of the principal of the trust estate if David North survived the testatrix but died before receiving all of the trust estate, and provides in pertinent part:

> [I]f he [David North] shall survive me and die before he shall have received all of said trust estate as aforesaid then upon his death, all of the remainder of said trust estate, including the share aforesaid held for the primary benefit of ROBIN PERLE DIENST . . . [subject to Robin Dienst's life estate] be held by my said Trustees for the benefit of and shall vest, share and share alike, in the descendants of my said adopted son who shall then be living, or if no descendents of his are then living, the same shall be held by my said Trustees for the benefit of and shall vest in my sister, DOROTHY NORTH HASKINS, and my brother, HENRY A. NORTH, share and share alike, if they both survive me, or if either of them does not survive me, then in the survivor of them, and distribution to said beneficiaries shall be postponed . . . [specifying the time of distribution]. Nothing in this Section 5 contained shall in any way affect

472

the payment of income to ROBIN PERLE DIENST for and during her natural life derived from that certain one-half (½) of the said trust estate. . . .

Article IV of the decedent's will disposes of the residuary estate.

Article VI of the will provides as follows:

Payments to each beneficiary under any of the provisions of this, my Will, shall be made in person or upon his or her personal receipt and to no one else. No beneficiary shall have any power to sell, anticipate, assign, mortgage, pledge or encumber, in whole or in part, his or her interest under this, my Will, or his or her right to receive the same or any part thereof, and no interest of any beneficiary hereunder shall be subject to seizure on any judgment, attachment, execution or other legal process issued against such beneficiary, or his or her interest hereunder, either at law or in equity, including, without limiting the scope of the aforesaid, any judgment, demand or decree for alimony or support, and any attempted sale, anticipation, assignment, mortgage, pledge or other encumbrance, and any attempted seizure on any judgment, attachment, execution or other legal process shall be absolutely null and void. No interest of any beneficiary shall be liable in any way for such beneficiary's debts.

The controversy in this case concerns the disposition of the remainder interest in Robin Dienst's life estate in the trust, the principal issue being the effect to be given Article VI of the will as aforesaid. The trial court determined that it was the intention of the testatrix under the existing factual situation that the remainder interest of Robin Dienst's life estate in the trust should pass in equal shares to Henry A. North and Dorothy North Haskins. Therefore it awarded one-half of the remainder interest to William S. North as executor of the will of

Dorothy North Haskins and one-half of said remainder to the estate of Henry A. North, or to Esther L. North as sole distributee of said estate. With regard to Article VI of the will of Helen North the court stated that:

> Article VI of the will is a spendthrift provision restricting transfer of interests prior to the time for the technical termination of the trust on the death of Robin Dienst. It is not a dispositive provision requiring survival of beneficiaries until the time for distribution and does not extend to prevent devolution on death or to prevent beneficial interests from being estates of inheritance or transmissible by will on the death of the holder of the interest. Notwithstanding Article VI the interest of Henry A. North passed under his will and the interest of Dorothy North Haskins passed under her will.

Defendant-appellant argues that the provision of Article VI which directs that payments to each beneficiary be made "in person . . . and to no one else" should be strictly construed so that a remainder interest, which would ordinarily vest at the death of the life tenant or at some prior time, would not become indefeasibly vested unless the remainderman survived actual distribution of the property; that therefore the clause precludes distribution to the executor of a deceased beneficiary of the share of corpus which that beneficiary would have received if living at the time of distribution; that an interpretation of the aforesaid clause which would allow the property to pass to the executor of a deceased beneficiary would subject the property to claims of the latter's creditors in contravention of the intention of the testatrix; and that since all of the named remaindermen except for Dorothy North Haskins predeceased Robin Dienst, and the former died before distribution to her of any portion of the aforesaid remainder, the property in question therefore passes by intestacy and should be

distributed to it (defendant-appellant) as testamentary trustee of the estate of David North, the testatrix' sole heir.

Defendant-appellant relies principally upon Routt v. Newman, 253 Ill 185, 97 NE 208; First Nat. Bank of Chicago v. Cleveland Trust Co., 308 Ill App 639, 32 NE2d 964; and Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d 43.

In Routt v. Newman, supra, the will of Caroline Newman devised certain real estate to William Routt in trust to pay the net income therefrom to her four sons, "one-fourth to each in person, and not upon any written or verbal order or upon any assignment or transfer by either or any of her sons." Under the terms of the will the trust was to terminate upon the death of all of the testatrix' sons. The will further provided that:

> Upon the decease of either or any of my said sons during the continuance of this trust, his share of the remaining income shall go to the child or children of his body during the continuance of this trust, and in case said son leaves him surviving no lawful child or children of his body, then one-half of his said share shall go to his surviving widow (during her lifetime) . . . .

One of the sons died after the testatrix, leaving a son and widow, but that child died prior to the termination of the trust. However, the will provided no alternative disposition of the income under those circumstances. The widow of the deceased son (Charlotte L. M. Newman) claimed that portion of the trust income which would have been paid to her own son (testatrix' grandchild) had the child survived until the termination of the trust. The court, after examining the testatrix' will to ascertain her intention, denied Charlotte Newman's claim. While pointing out that the words of the will would ordinarily indicate that the grandchild of the testatrix shall receive

475

the income until the termination of the trust upon the death of the last surviving son of the testatrix, the court stated at pages 189, 190 that:

> There is, however other language in the will entirely inconsistent with the continuance of the payment of the income to the representative of a deceased child of one of the sons. It is provided that "any person under the terms of this said trust who shall become the recipient of the said remaining income, or any portion thereof, shall have same paid to him, her or them in cash and in person into their hands, and not to be paid upon any written or verbal order nor upon any assignment or transfer by any such person." The continued existence of the recipient of the fund was necessary to a compliance with this requirement. The portion of testatrix's property included in the trust was manifestly intended to be placed beyond the reach of creditors of the beneficiaries, and that object was an important part of her scheme. She gave other property to her sons in fee simple, but the control of this portion she intended should be so restricted that neither the land itself nor the income could be reached by any creditors during the lifetime of any of her sons. The language quoted is first used in regard to the sons and is then repeated as applying to their children, and in our judgment limits the time during which a share of the net income shall be paid to any child of a son, to his lifetime.
>
> It might be said that this language does not exclude Charlotte L. M. Newman, but only makes payment of the income to her subject to the same terms as the payment to her son. But Charlotte L. M. Newman cannot become the recipient of the income under the terms of the trust. She is not mentioned in the will nor is she within any class mentioned in the will. If she receives any part of the

476

income it is as the next of kin of her son, to whom, only, it is given under the terms of the trust. If the payment to her son does not terminate with his death, then such payment must be made to an administrator, who would then be the recipient under the terms of the trust, and would administer the sum received from the income, together with all the assets of the estate, according to law, and pay it, without restriction, to the persons entitled to receive it. It happens that the son here died during his minority, but this cannot affect the character of his interest. Had he been an adult, able to contract debts, the effect of the continuance of the payment of the income after his death would have been to subject the income to the payment of his creditors. This would be a manifest perversion of the intention of the testatrix, by the creation of the trust, to prevent this very thing.

We would point out that the court in Routt v. Newman, supra, examined the will of the testatrix to ascertain her intention vis-a-vis the "in person" clause; and that the holding of the court was not repugnant to any express provision in her will. On the contrary, the "in person" provision of the spendthrift clause was entirely consistent with, and, indeed, was employed in dispositive context as an integral part of the dispositive provisions of the will.[1]

---

[1] As an example, one of these dispositive paragraphs is as follows (quoted by the Appellate Court in Routt v. Newman, 159 Ill App 456, 457; immaterial matter being omitted where indicated, and emphasis supplied) ;

"First, *a. . . . .* to pay over all remaining rents and income in cash as follows, to-wit: One-fourth of said remaining income *into the hands of* my said son, Harvey R. Newman, *in person;* one-fourth of said remaining income *into the hands of* my said son, Benjamin L. Newman, *in person;* one-fourth of said remaining income *into the hands of* my said son Charles S. Newman *in person* and one-fourth of said remaining income *into the hands of*

477

In First Nat. Bank of Chicago v. Cleveland Trust Co., 308 Ill App 639, 32 NE2d 964, the construction of two wills was involved: first, that of John F. Taylor, which in part established a trust which was to terminate upon the death of the last surviving income beneficiary (one of which being Lillian Ludlow) and provided that upon termination thereof his widow had a power of appointment; and second, that of his widow (Jennie Taylor) which appointed the heirs of Sarah P. Prall (one of which being Lillian Ludlow) to a one-third interest. The court set forth the issue at pages 650, 651 thusly:

> In considering the principal controversy involved, namely, whether Lillian P. Ludlow was appointed to receive any part of the remainder of the trust estate, two primary inquires arise: (1) whether the will of John F. Taylor, construed in the light of his surroundings and circumstances, empowered Jennie B. Taylor to appoint Lillian P. Ludlow, who necessarily would be dead at the time of the distribution of the property then in the possession of the trustee; and (2) whether Jennie B. Taylor intended to appoint Lillian P. Ludlow. The answer to these questions necessitates an inquiry into the general plan of the will of John F. Taylor, the state and condition of his family, and significant portions of his will, including the so-called spendthrift provision contained in Article VI, and a like inquiry into the general plan of the will of Jennie B. Taylor, the state of her family and significant portions of her will.

After discussing the provisions in John Taylor's will the court stated at page 655 that:

---

my said son Henry J. Newman *in person,* and the said remaining income is not to be paid upon any written or verbal order nor upon any assignment or transfer by either or any of my said sons, Harvey R. Newman, Benjamin L. Newman, Charles S. Newman and Henry J. Newman."

We revert to the first inquiry, whether the will of John F. Taylor, construed in the light of his surroundings and circumstances, empowered his wife to appoint Lillian P. Ludlow, who necessarily would be dead at the time of the distribution of the property then in the possession of the trustee. It is apparent from the various provisions of the will hereinbefore set forth that it was John F. Taylor's intention that only living beneficiaries should take thereunder.

The court then, in response to the contention that the spendthrift clause (Article VI of the testator's will) conclusively indicated that vesting must be postponed until distribution, pointed out at page 657 that:

As heretofore pointed out, the language of this article directs that payments be made to all beneficiaries in person or upon their personal receipt, and it prohibits the assignment or other anticipatory disposition of any interest in the principal by any beneficiary prior to distribution. It is indeed difficult to conceive that if this article of the will is to be taken into consideration and given effect how any conclusion harmonious with the vesting prior to distribution could fairly be reached.

While the court found that the spendthrift clause "is to be considered with the whole will in determining the intentions and plan of John F. Taylor in disposing of his estate," we would point out (1) that the court subsequently determined that Jennie Taylor never intended to exercise the power of appointment in favor of Lillian Ludlow; (2) that the holding of the court was not repugnant to any express intention of the testator; and (3) that the court construed the will of John Taylor in the light of his surroundings and circumstances.

In Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d 43, the two trusts in question contained spend-

thrift clauses, both of which included a provision that "all payments of net cash income . . . shall be made to such beneficiaries in person or upon their personal receipt" and in addition provided that none of the income arising from the trust estate shall "ever at any time or in any part be subject to the claims of creditors of the respective beneficiaries." After the death of one of the beneficiaries the question arose as to whether accrued income should go to the beneficiary's estate or whether it should be divided among the two remaindermen. In concluding that the testator intended the latter the court stated at page 264:

> When the settlor directed that none of the income arising from his trust estate or the respective trust funds, or any share or part thereof, shall "ever at any time or in any part be subject to the claims of creditors of the respective beneficiaries," he precluded the passing of any part of that income to the estate of any beneficiary.

As in Routt v. Newman, supra, and First Nat. Bank of Chicago v. Cleveland Trust Co., supra, the court's holding was not repugnant to any express provision of the testator's will.

In none of the aforesaid cases, nor in any other case of which we are apprised, is the conclusive rule established that all such "in person" clauses should be construed in a similar manner. Rather, in all of those cases the courts construed the respective "in person" clauses in light of the intention of the testator as ascertained upon examination of the testator's entire will, and in none of those cases was the judicial construction of the clause repugnant to any express intention of the testator. In the instant case the testatrix directed in Section 1 of Article III of her will that the trustee set aside and apply trust income over a period of three years to satisfy specific bequests of money to specified persons "who may be living at the time of my death." Under

the construction advanced by the defendant-appellant, however, none of the aforesaid persons would be entitled to that bequest of trust income unless he or she survived actual distribution thereof, even though the testatrix specifically made the gift contingent only upon them surviving her. Moreover, we do not believe that it was the intention of the testatrix that the vesting of a bequest under her will should depend upon the whim or lack of diligence of a trustee who does not distribute the property in question as promptly as he should. (See Wiener v. Severson, 11 Ill2d 347, 352, 143 NE2d 225.)

In LaSalle Nat. Bank v. MacDonald, 2 Ill2d 581, 119 NE2d 266, the conservator of an incompetent's estate brought an action against the trustee of a testamentary trust (the incompetent being a beneficiary of the corpus thereof) in which it alleged that the trust had, by its terms, terminated and requested that the court order the trustee to deliver up that portion of the corpus which would have been distributed to the incompetent had the trustee relinquished control when the trust was to end. The trustee argued that she could not terminate the trust because a conservator had been appointed prior to the supposed termination date thus making it impossible to comply with a requirement of the testator's will that "payments to all beneficiaries of my estate be made to such beneficiaries in person or upon their personal receipt." The Supreme Court, refusing to strictly apply the spendthrift clause without first examining the testator's entire will to determine his intention, held in favor of the conservator and referred to the clause as "a stock spendthrift clause." The court stated at page 587 that:

[I]t does not follow that the [testator] intended also to abandon his clearly expressed purpose that distribution occur at the end of twenty years.

In its holding the court determined that by the use of the word "payments" the testator intended the afore-

481

said clause to be applied only to "payments" of income and not to "distribution" of corpus. At no point in its opinion did the court refer to the Routt, Cleveland Trust or Cowdery cases, supra, nor did it choose to resolve the apparently open question of whether the "stock spendthrift clause" would automatically preclude termination of the trust if its scope were not limited to "payments" of income.

In Costello v. Warnisher, 4 Ill App2d 571, 124 NE2d 542, the court had before it a will containing a spendthrift clause which provided in part that "I direct that the payments to all beneficiaries of my estate be made to such beneficiaries in person or upon his or her personal receipt." The court stated at page 585:

> Appellants urged that the "spendthrift" clause of the will requires payment to be made directly to the beneficiaries and that consequently no payments could be made to . . . the administratrix of Frank's estate [Frank being a deceased beneficiary]. . . . The "spendthrift" clause is a formal provision designed principally to avoid frustration of the testator's intentions by the claims of creditors . . . . [I]t must yield to the testator's intention as derived from the language of the dispositive provisions of the will.

Construing Article VI of Helen North's will in light of other provisions of the will, we find that it was her intention that the "in person" clause be construed only as effectuating the purpose of the spendthrift provision itself and not for any dispositive purpose. Consequently it does not have the effect of postponing the vesting of any interest, otherwise vested, until the time of actual distribution.

In determining that Dorothy North Haskins and Henry A. North were entitled to the property in question the trial court stated:

482

It was the intention of testatrix, Helen B. North, that, under the existing factual situation, the trust property should pass, subject to the life estate in Robin Perle Dienst, to Helen B. North's brother, Henry A. North, and her sister, Dorothy North Haskins, share and share alike. By reason of the death of Henry A. North leaving his estate to his widow, Esther L. North, his share passes as part of his estate to her.

The intention found in the preceding paragraph . . . is expressed in Section 5 of Article III of the will where it is provided that, if David Brindley North should die before Robin Perle Dienst without leaving a descendant living, the property should, subject to the life estate, be held for and vest in her sister Dorothy and brother Henry if they survived testatrix.[2] The trust property is disposed of by Article III of the will.

Neither the death of Henry A. North before David Brindley North nor the death of Dorothy North Haskins after the deaths of both David and Robin Perle Dienst defeats Henry's or Dorothy's interest, which is conditioned by the terms of Section 5 of Article III only on his or her surviving testatrix. No rule of law or of construction prohibits the intention of testatrix as found . . . above.

Defendant-appellant contends that if the "in person" clause does not bar distribution to the executors and legatees of trust beneficiaries, that under Section 4 of Article III of Helen North's will David North possessed a vested remainder which was subject to total divestment only if (1) he predeceased Robin Dienst leaving no descendants, and (2) Henry North and Dorothy North Has-

---

[2] The exact language of Section 5 is: "shall vest in my sister, Dorothy North Haskins, and my brother, Henry A. North, share and share alike, if they both survive me."

kins survived him; that since the latter alone survived David North only one-half of the remainder interest was divested; that since Henry North predeceased David North one-half of the remainder interest was not divested and therefore it passed to the appellant as testamentary trustee under the will of David North.

Cross-appellants (Robin Dienst's executors) contend that in the event David North predeceased Robin Dienst his continued interest in the remainder was contingent upon his leaving issue; that the interests of Henry North and Dorothy North Haskins were contingent upon their surviving David North; that since David north predeceased Robin Dienst without leaving issue, and Henry North predeceased David North, that portion of the remainder interest otherwise attributable to Henry North passed under the residuary clause (Article IV) of the testatrix' will in equal shares to the appellant and cross-appellants.

██ Article III, Section 4, of the will which grants the remainder interest to David North, provides:

> Upon the expiration of three (3) years from the date of my death, if my said adopted son is then living and shall have attained the age of thirty-five (35) years or if he is under such age then upon his attainment of such age, my Trustee shall pay over, assign and deliver to him, if my friend, ROBIN PERLE DIENST, is living, the share of the trust estate then held for his primary benefit as aforesaid, . . . or if my said friend shall then be dead my said Trustees shall pay over, assign and deliver to my said adopted son the entire trust estate, together with all accumulated income. If my friend, ROBIN PERLE DIENST, survives me and subsequent to the expiration of three (3) years from the date of my death predeceases my said adopted son after he shall have attained the age of thirty-five (35) years, then upon her death my said Trustees shall

484

pay over, assign and deliver to my said adopted son all of the share of the trust estate theretofore held for the primary benefit of my said friend, ROBIN PERLE DIENST.

There is no question but that it was the intention of the testatrix to grant to her son, David North, a remainder interest of some type in Robin Dienst's life estate in the trust. While she used the word "if" in disposing of the remainder interest, it is clear from the aforesaid provision read in conjunction with other portions of the will that the testatrix intended the word "if" to refer to the time of distribution of the trust corpus and not to the time of vesting of any interest therein. The testamentary scheme was that David should not have complete control over all of the income and corpus of the trust until he was at least thirty-five years old, and the word "if" was frequently used in that context. While in Section 2 of Article III the testatrix gave to David North a vested interest in certain undistributed trust income,[3] the word "if" is used on several occasions in Section 2 to refer to the distribution of that vested interest, providing:

---

[3] In Section 2 of Article III the will provided that the trustees were to hold one-half of the corpus for the benefit of Robin Dienst and that:

> [The trustees shall] hold the other half of said trust estate for the primary benefit of my adopted son . . . and while he and . . . ROBIN PERLE DIENST are both living my said Trustees shall pay to him one-half (½) of all the remaining net income derived therefrom until he attains the age of thirty-five (35) years, the undistributed portion of said remaining net income to be accumulated by my said Trustees during such period and paid to my said adopted son when he attains such age.

Since words of immediate gift prevent a gift distributable in the future from being contingent on survivorship (Howe v. Hodge, 152 Ill 252, 38 NE 1083), the interest of David North in the undistributed trust income as aforesaid was clearly vested.

485

If my said adopted son attains thirty-five (35) years of age before my death, then from the time of my death, or if he attains such age within three (3) years from the time of my death, then from the time he attains such age and while he and ROBIN PERLE DIENST are both living, my said Trustees shall pay to him all of the remaining net income derived from the share of said trust estate held for his primary benefit as aforesaid until the expiration of said three (3) year period.

In the same context the word "if" is used in Section 3 of Article III to dispose of the income from the life estate of Robin Dienst after her death.

Therefore, by the aforesaid language of Section 4, it can be seen that it was the intention of the testatrix merely that the remainder interest in Robin Dienst's life estate should not be distributed to David North under any circumstances unless he shall have attained the age of thirty-five years at least three years subsequent to the death of the testatrix. We would also point out that the testatrix, in Section 4, used the words "pay over, assign and deliver to my said adopted son" when referring to the remainder interest, further indicating that the remainder had vested but was to be distributed at that specified age at the earliest.

 The law prefers the vesting of estates at the earliest possible time and, where either of two constructions is possible, the construction that a devise is vested and not contingent will be adopted. Riddle v. Killian, 366 Ill 294, 8 NE2d 629. The fact that the remainderman may die before the life tenant and the remainder never become vested in possession is not a test of whether the remainder is vested or contingent. A remainder interest is vested if there is a present capacity to take effect in possession if the life tenant dies or for any reason the life possession becomes vacant. Fleshner v. Fleshner, 378 Ill 536, 39 NE2d 9. We find that under

486

Section 4 of Article III David North was given a vested remainder in Robin Dienst's life estate in the trust property.
■ ■ However, Section 5 of the will directs that David North's vested remainder shall be divested if he dies before receiving all of the trust property. We repeat its provisions:

> ■f he [David North] shall survive me and die before he shall have received all of said trust estate as aforesaid then upon his death, all of the remainder of said trust estate, including the share aforesaid held for the primary benefit of ROBIN PERLE DIENST . . . [subject to Robin Dienst's life estate] be held by my said Trustees for the benefit of and shall vest, share and share alike, in the descendants of my said adopted son who shall then be living, or if no descendants of his are then living, the same shall be held by my said Trustees for the benefit of and shall vest in my sister, DOROTHY NORTH HASKINS, and my brother, HENRY A. NORTH, share and share alike, if they both survive me, or if either of them does not survive me, then in the survivor of them, and distribution to said beneficiaries shall be postponed . . . [specifying the time of distribution]. Nothing in this Section 5 contained shall in any way affect the payment of income to ROBIN PERLE DIENST for and during her natural life derived from that certain one-half ($\frac{1}{2}$) of the said trust estate . . . .

While this section provides for alternative distributions in case of divestiture, the testatrix clearly intended divestiture to be dependent solely upon David North's dying prior to his receiving all of the trust property. Moreover, upon an examination of this section, we do not find that it was the intention of the testatrix that Henry North survive David North in order for any interest to

487

be vested in him. The only requirement of Henry North's survival is that he survive the testatrix. If the testatrix had intended that the interest would not be vested in Henry North prior to the death of David North, she could have included such a provision in her will. Testatrix was obviously aware of her ability to so provide since she similarly provided in two separate instances: first, in the divestiture of David North's remainder interest; and, second, in providing for the specific contingency that Henry must survive the testatrix in order to receive any interest whatsoever. We would also point out that the testatrix used the word "vest" in referring to Henry's interest if he should survive the testatrix. We find that Henry A. North was granted an executory interest in the property in question.

██ There is no dispute but that Dorothy North Haskins (or the executor under her will) is entitled to one-half of the remainder interest in Robin Dienst's life estate since Article VI of the testatrix' will does not bar her interest from taking effect. Moreover, since the interest of an executory devisee passes to his estate if he predeceases the occurrence of the contingency which divests the freehold estate (Fitzgerald v. Daly, 284 Ill 42, 119 NE 911) the other one-half interest in the aforesaid remainder properly passed to the estate of Henry A. North. Therefore, the interest of David North being divested upon his death, the trial court was correct in its determination that the remainder interest of Robin Dienst's life estate in the trust should pass in equal shares to Henry A. North and Dorothy North Haskins.

The judgment of the trial court is affirmed.

Affirmed.

ENGLISH and McCORMICK, JJ., concur.